UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

|  |  |
|---|---|
| v. | **Hon. Hugh B. Scott** |
|  | 04CR278S |
| NIKOLIA ROMANTCHENCKO, | **Report** |
|  | **&** |
| Defendant. | **Recommendation** |

Before the Court is defendant's motion to suppress (Docket No. 23) his statements and his cellular telephones seized during defendant's arrest following his crossing of the international border into this country.  This Court rendered a Report & Recommendation (Docket No. 29) that recommended that a suppression hearing be held, and Judge Skretny adopted that recommendation (Docket No. 32).  The suppression hearing was held on August 11, 2005 (see Docket No. 33, transcript of hearing).  Defendant (Docket No. 35) and the government (Docket No. 36) each submitted post-hearing memoranda, and the motion was deemed submitted as of October 11, 2005 (see Docket No. 34).  The Government indicates that it relies upon earlier responses and affidavits filed in this case (Docket No. 36, Gov't Memo. at 4).

## BACKGROUND[1]

On October 14, 2004, defendant was indicted for importation of marijuana and smuggling goods into the United States (Docket No. 14).  The indictment charged that, on November 4,

---

[1] Familiarity with the earlier Report & Recommendation, Docket No. 29, is presumed.

2003, defendant imported marijuana into Niagara Falls, New York (id.). Defendant plead not guilty. (Docket No. 15; see Docket No. 23, Def. Atty. Aff. ¶ 3.)

Defendant, a Russian speaker whose second language is English, was driving a tractor trailer truck and crossed into the United States at the Queenston-Lewiston Bridge and was detained at the Lewiston Bridge Port of Entry (see Docket No. 23, Def. Atty. Aff. ¶ 9; Docket No. 27, Def. Aff. ¶¶ 3, 5). The truck was searched then moved for secondary inspection where three duffle bags were found in the trailer which inspectors believed to be marijuana (Docket No. 23, Def. Atty. Aff. ¶¶ 11-12; Docket No. 21, Gov't Responding Aff., Ex. A, Compl., Supporting Aff. ¶¶ 3, 5). Defendant then was arrested, placed in United States Customs Service custody, questioned by Customs agents and later asked to sign a statement advising him of his Miranda rights and his formal waiver of those rights (Docket No. 21, Ex. A, Compl. Supporting Aff. ¶ 4; Docket No. 23, Def. Atty. Aff. ¶ 12; Docket No. 27, Def. Aff. ¶¶ 6, 8; Docket No. 28, Gov't Response Aff. ¶ 4, Ex. A). Defendant's two cellular telephones were seized. Defendant claims that he did not understand the warnings given to him while he was in Customs Service custody (Docket No. 27, Def. Aff. ¶¶ 7, 8, 13).

*August 11, 2005, Suppression Hearing*

Defendant had a Russian interpreter present during the August 11, 2005, suppression hearing (Docket No. 33, Tr. at 2). The only witnesses to testify at that hearing were Immigration and Customs Enforcement Special Agents Ryan Glor and Grant Friday, who were called by the Government. These agents questioned defendant following his arrest. Special Agent Friday testified that defendant did not indicate that he did not understand English when he was advised of his Miranda rights (Docket No. 33, Tr. at 51; see Docket No. 36, Gov't Responding Memo. at

2). Friday read defendant his Miranda warning (Docket No. 33, Tr. at 54). Special Agent Friday testified that he read each paragraph of the warning and paused and asked the defendant if he had questions about the rights just read to him (id.). Defendant then signed the statement of rights form, to acknowledge that his Miranda rights were read to him and that he understood what they were, and the waiver of rights form (id. at 54-55). Defendant indicated that he understood English and that he was asked questions and responded in English (id. at 55, 56-57; see id. at 9-10 (Special Agent Glor)). When posed a hypothetical, Friday stated that, if he learned that a suspect did not speak or understand English, he would first determine the degree the suspect could not speak English and, if he could not understand, an interpreter would be called to facilitate the conversation (id. at 60-61).

Special Agent Glor testified that he took notes during the questioning. Glor observed that the defendant did not say that he did not understand the questioning that occurred in English (id. at 10-11). If Glor believed a suspect did not speak English, Glor testified that he would have obtained a translator for that suspect (id. at 45).

Defendant did not call any witnesses (id. at 117).

## DISCUSSION

Defendant, who speaks English as his second language and claims that he did not understand the warnings issued to him, argues that he did not make a knowing and intelligent waiver of his Miranda rights, thus his statement following that purported waiver should be suppressed. He also contends that he was not given Miranda warnings by the border inspectors during their questioning prior to the Special Agents' investigation. He asserts that the Government was not authorized to seize his cellular telephones.

I.      Suppression of Statements--post-<u>Miranda</u> Warning

Defendant argues that he made various statements while in Customs Service custody but without having made a knowing and voluntary waiver of his right to remain silent. (Docket No. 23, Def. Atty. Aff. ¶¶ 18-19). Further, defendant believes that his detention was unreasonable since there was no probable cause for his arrest. (<u>Id.</u> ¶ 20.)

The Government responds that <u>Miranda</u> warnings and the warning statement and written waiver form (in English) were given to the defendant. (Docket No. 21, Gov't Atty. Aff., Ex. A, Compl. Supporting Aff. ¶ 4; Docket No. 24, Gov't Aff. ¶ 4; Docket No. 38, Gov't Response Aff. ¶ 4.) Since defendant's language proficiency and his understanding of the <u>Miranda</u> warnings were at issue, a hearing was necessary.

Defendant contends that he was not asked to read the <u>Miranda</u> rights aloud for himself (Docket No. 35, Def. Memo. at 6; <u>see</u> Docket No. 33, Tr. at 41, 42-43). Defendant had a translator present during the suppression hearing (Docket No. 33, Tr. at 18). He also argues that he was questioned by border inspectors (who were <u>not</u> called as witnesses) prior to his arrest and that questioning vitiated his subsequent waiver (Docket No. 35, Def. Memo. at 17). The Government replies that the Special Agents testified that defendant appeared to understand and respond in English and defendant thus understood (and knowingly and intelligently waived) his <u>Miranda</u> rights.

Defendant, however, does not cite authority that requires that he read aloud the <u>Miranda</u> warnings in order to satisfy the requirement that he manifest his understanding of those rights. The record here indicates that defendant manifested to the Special Agents his understanding of English (or at least did not protest or show that he did not understand) during their advising him

of his rights and subsequent waiver of those rights. Cf. United States v. Amano, 229 F.3d 801, 804-05 (9th Cir. 2000) (totality of circumstances with foreign national defendant who appeared to understand English and warnings given in English held to have knowingly waived rights). Therefore, defendant's motion to suppress his statements should be **denied** as to defendant's statements made following his Miranda warning and waiver.

II.     Suppression of pre-Miranda Border Crossing and Detention Statements

Defendant, however, seeks to suppress his statements made to border inspectors prior to his arrest and, because he was questioned before being given his Miranda rights, his post-warning statements also should be suppressed (Docket No. 35, Def. Memo. at 17). According to the Government's responding affidavit (Docket No. 24, ¶ 4), after a quantity of marijuana was found in defendant's tractor-trailer truck, defendant was detained by U.S. Customs and Border Patrol Inspectors for up to an hour and a half until Special Agents from Immigration and Customs Enforcement arrived. Then defendant was advised of his Miranda rights (as previously described) (id.). The Government, in support of the criminal Complaint, relies exclusively upon defendant's statements to Special Agent Friday (Docket No. 21, Gov't Atty. Aff. ¶ 18, Ex. A; see Docket No. 24, Gov't Atty. Aff. ¶ 7; Docket No. 28, Gov't Atty. Responding Aff. ¶ 4). Special Agent Glor testified that other inspectors had spoken with defendant prior to his arrival (Docket No. 33, Tr. at 6). Defense counsel contends that defendant was questioned by various inspectors prior to the Special Agents' arrival (Docket No. 23, Def. Atty. Aff. ¶ 13) and defendant repeats these contentions in his own affidavit (Docket No. 27, Def. Aff. ¶ 6), stating that he "was questioned by various special agents from the Customs Service while in a holding cell. Initially, the agents asked [him] various information. Subsequently they asked [him] to sign a paper."

(Docket No. 27, Def. Aff. ¶ 6.) But defendant does not aver what statements he made and did not testify at the suppression hearing. The questioning referred to in defendant's affidavit appears to be that of the Special Agents leading to the Miranda warnings.

The Government now argues that a search at the international border need not have a warrant, probable cause or reasonable suspicion (Docket No. 36, Gov't Memo. at 5). The Government also argues this in support of the seizure of defendant's cellular telephones (see Part III, infra).

Defendant, however, does not identify which pre-Miranda warning statements he seeks to be suppressed or the extent or nature of the pre-Miranda questioning. This differs from Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601 (2004), relied upon by the defendant (see Docket No. 35, Def. Memo. at 16-17), where the defendant was questioned for a half hour about the crime before being advised of her Miranda rights and having the interrogation resume following her purported waiver of her rights, 124 S.Ct. at 2606 (plurality opinion). There is nothing in the record to indicate the coercion Miranda was designed to prevent, as recognized by the Seibert plurality, see id. at 2613. While the Government did not call the other inspectors who may have questioned defendant, the defense did not subpoena these officers either. Thus, it is unclear what defendant may have said before being advised of his rights that either should be suppressed or should lead to suppression of post-warning statements. Defendant's motion to suppress his pre-warning statements should also be **denied**.

III.    Suppression of Seized Cellular Telephones

Defendant objects to the seizure of his cellular telephones and subsequent warrantless searches of the telephones, including retrieving telephone numbers from those telephones.

(Docket No. 23, Def. Atty. Aff. ¶¶ 21-22.) The Government took an oral swab from defendant's mouth and had tested the telephones; defendant believes that the Government intends to match any DNA on the telephone to defendant's genetic material (id. ¶¶ 15, 23) without a warrant for the subsequent searches (id. ¶ 24). The government argues that the seizure of the telephones was incident to defendant's lawful arrest (see Docket No. 21, Gov't Atty. Aff. ¶¶ 19-20 (warrantless border searches authorized)) and that searches of the telephone numbers contained. Given the evidentiary hearing held in this case, the Court initially held determination of this part of defendant's motion in abeyance.

Defendant now contends that there was no justification for the seizure of his telephones (Docket No. 35, Def. Memo. at 12-16). First, the search went beyond the scope of a border inspection (which justified the initial stop) and, as such, required a warrant or probable cause. Second, defendant argues that the search was not incident to an arrest. Third, the telephones were found in the rear of the truck, some fifty feet away from defendant when he was detained, thus beyond his grabbable reach to be subject to seizure incident to his arrest (Docket No. 35, Def. Memo. at 9; cf. Docket No. 33, Tr. at 63, defendant was fifty feet away from the truck when he was arrested, Tr. at 72-73, Special Agent Friday testifying standard length of trailer is fifty feet).

The Government counters that defendant carried the telephone at the time of his arrest (Docket No. 33, Tr. at 60, 97; Docket No. 36, Gov't Responding Memo. at 4). The Government contends that these telephones were seized incident to defendant's arrest to preserve evidence, especially given the nature of the technology of the cellular telephone and its limited memory (Docket No. 36, Gov't Responding Memo. at 4; Docket No. 24, Gov't Atty. Aff. ¶¶ 5-6). See

7

United States v. DeLaPaz, 43 F. Supp. 2d 370, 376 (S.D.N.Y. 1999) (answering arrestee's cellular telephone prior to arraignment held to be presumptively reasonable and not to violate Fourth Amendment); United States v. Parada, 289 F. Supp. 2d 1291, 1303 (D. Kan. 2003) (agent had authority to seize cellular telephone memory as a matter of exigency to preserve the destruction of evidence).

The Government argument essentially is that the stop initially was justified as a border inspection which does not require Fourth Amendment probable cause.  Probable cause then was found to arrest defendant and to seize his telephones when the contraband was found during the border inspection.  The eventual seizure of the telephones were to preserve evidence incident to an arrest and there was an exigency to preserve the memory contained in the telephones before defendant (or others) attempted to destroy potential evidence (see Docket No. 21, Gov't Atty. Aff. ¶ 20).  The border inspection is inherently a reasonable search as an exercise of sovereignty by the national government, United States v. Ramsey, 431 U.S. 606, 616-18, 619, 620 (1977); see also Torres v. Puerto Rico, 442 U.S. 465, 473 (1979).  Here, the border inspection revealed the entry of contraband (the bags of marijuana) which lead to defendant's arrest.  That arrest, in turn, lead to the seizure of the cellular telephones.

Defendant makes much of his contention that the telephones were not in his grabbable reach (Docket No. 35, Def. Memo. at 9, 14; Docket No. 33, Tr. at 63-64), see Chimel v. California, 395 U.S. 752, 763 (1969) (recognizing search incident to arrest for area in suspect's immediate control, but not for routinely searching room where arrest occurred absent a warrant). Special Agent Friday testified that he reported that the telephones were obtained from the cab of the tractor-trailer (Docket No. 33, Tr. at 97), with defendant being arrested near the rear of the

8

trailer some fifty feet away (id. at 63-64), but his recollection refreshed by his written report was that defendant had the telephones on his person (id. at 97). He later testified that he got the telephones from someone else who obtained them from defendant's person (id. at 111-12). He testified that he had not seized the telephones and only received them from someone else. Thus, the question of where the telephones were seized from defendant (either from his person or from somewhere in the truck) turns on Special Agent Friday's recollection or the testimony of the border inspectors who actually seized the telephones. On the present record, the Government has suggested that the cellular telephones were on defendant's person or at least raise an issue of fact for the Court with dispositive jurisdiction to consider. Thus, it is recommended that defendant's motion to suppress the seized telephones be **denied** without prejudice to be renewed at trial.

## CONCLUSION

For the reasons stated above, it recommended that defendant Nikolai Romantchenko's motion to suppress (Docket No. 23) be **denied** (as to defendant's pre- and post-Miranda warning statements) and **denied without prejudice** (as to defendant's seized cellular telephones).

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report and Recommendations to all parties.

**ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIC TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provision of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

s/HBS
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
November 8, 2005